United Association of Journeymen and Apprentice Plumbers and Pipefitters Local 74 versus IBEC Local 313 May it please the court, my name is Martin W. Mills. I'm here today on behalf of Plumbers and Pipefitters Local 74. If I may, I'd like to reserve three minutes for rebuttal. Go ahead. The fundamental dispute in this case, although it presents itself a little bit unusually, is a contract dispute. It is unusual in that it is based on a collective bargaining agreement, for one. Well, here's what I don't understand. So in paragraph 31 of your complaint, you say, I'll read it to you so you don't have to scurry. Thank you. Local 313's departure from the long-standing practice of forwarding the appropriate amounts deducted from the employee paychecks, pursuant to their authorization and the collective bargaining agreement, constitutes a breach of the agreement between the two labor organizations. So what I don't understand is the focus on the CBA. I thought what this case was really about was an agreement between 313 on the one hand and 74 on the other, and that that was the source of the breach of contract. Am I wrong? Well, Judge Greenlee, I would say there's actually two contracts in play here. The one cited in that paragraph is secondary to the first obligation, which arises pursuant to the collective bargaining agreement. So how can there be an obligation that arises, to use your language, pursuant to the collective bargaining agreement if Local 74 isn't a party to the collective bargaining agreement? I thought that the key here is there's this agreement that we have between these two labor organizations, and it is whatever obligations that arise from that agreement that have been breached and that lead 313 to owe us this money. Well, I think there are two steps to it. Yes, there is this secondary contract to forward the monies deducted pursuant to the first contract, and there can be standing for a labor organization to stand as a third-party beneficiary to a collective bargaining agreement. And in this situation, Local 74 stands as a third-party beneficiary because it stands to collect dues monies for the members it provides to work at these facilities under the terms of that contract. So third-party beneficiaries are not an unusual situation. When does the contract reach between 313 and 74? I'm sorry? When was the contract reached between 313 and 74? Well, that element of it is an implied contract. It's not in writing. So it's not a contract? Oh, it's absolutely a contract. It's an implied in fact contract? Yes, sir. What are the terms of the implied in fact contract? And the way this arrangement operates, when the employer deducts monies from the paychecks It's kind of a showstopper when you tell a court there's a contract. We say, well, we'd like to look at it. You say, well, it doesn't really exist in writing. It's there. It's implied. All right, well, I'm very interested in the answer to Judge Greenery's question, which is, well, what are the terms and conditions of this implied contract? And how would we know that, given that there's nothing in the record? There is agreement in the record. There's the terms of this implied in fact contract are in the record? I would say so. Another way to ask is, you represent 74, right? Yes, sir. List for us the obligations and duties of 74 under the agreement, and then list for us the obligations and duties of 313 under the agreement. The obligations of Local 74, the pipefitters local, is to provide skilled mechanics to work at the facility. The obligation of Local 313 is that when it receives the monies deducted from the paychecks of those 74 members from the employer, it segregates the dues due for its own members and the benefit contributions due for its own members and retains those. Who would 313 promise to do that and when? It dates back to the outset of this relationship, that when the facility was originally organized and this is admitted in the answer to the complaint and in the depositions taken in this matter, that when it initially arose, it was a cooperative enterprise, that it was necessary for Local 74 to perform the skills of its trade along with Local 313. They can't do it as a data center without the plumbers. That's a given. Correct. It's about two-thirds electricians and one-third plumbers. That's correct. But who among the electricians, what person or persons, agreed to do what you just said was an obligation of 313 under the contract and when did they agree to do it? This goes back to the organization of the facility in 2004, when both organizations had different business managers than they currently do when this dispute arose. So in 2004, when the agreement was made with the employer that it was going to be set up this way, that is when this agreement came into being. And there is, within the contract itself, a reference to a special understanding. So you're suing on an oral agreement? I'm suing on both. The collective bargaining agreement itself. Okay. And what are the terms of the oral agreement? Two people met on January 1st of 2000-whatever and they said that Local 313… Who are they? I need to fill in the blank. Yes, yes, sir. That Local 313 will receive the dues monies deducted from the paychecks of Local 74's members as it does its benefit contributions for 74 members and then will forward those monies to the administrator of Local 74. We're not getting any answer to the question. I take it that that's because you don't know who. Is that right? Is it fair to say? Well, in testing your hypothesis or your assertion that there is an implied, in fact, contract, I think my colleagues and I were just wondering who made this contract. Who could you point to to say, yeah, these are the people who negotiated, these were the terms. And having now spent a few minutes on this and not getting a who, I take it that your answer is, in effect, well, I couldn't identify an exact person, but there's a course of dealing and we're relying on that. Is that the bottom line? There is a course of dealing. We are relying on that. Okay. But the deal was made by the business managers of each organization. At that time, it was Steve Horgan and the name of the Local 74 business manager escaped me at the moment. Your client's business manager. Yes. So they're the who and they did this at the outset. Yes. And there's no evidence of this in the record but for the course of dealing, right? Yes. The behavior is borne out. All right. But help me with this. Assuming we're going to stop with this stage, the next step would require, based on what you said earlier, because you said that it is possible within a CBA for there to be a third-party beneficiary, but in the CBA, where is the mention of forwarding of dues? It's the payment of dues, actually, that is within the agreement. You need the forwarding of dues, right? Because you need an understanding that whatever is paid in on 74 is going to be paid out, right? That arose by practice, actually. So it's not in the agreement. The mechanism by which it goes from the employer to 313 to 74 is not specifically in the contract. Okay. So then how are you making this third-party beneficiary argument? Because my understanding is if you want to make the third-party beneficiary argument, it's got to be specifically mentioned in the CBA. It calls for the payment of dues, not the mechanism by which it reaches my client's pocket. Cushman has to pay the dues. Correct. 313, right? Under the CBA. Well, to both unions under the CBA. Right. Well, then we should agree on the right question. Right. Yes. Where does it say that Cushman shall pay X dollars to Local 313 and Y dollars to Local 74? Primarily that appears in Article 10, Section A of the agreement that fixes the amount of dues to be paid by Local 74 members according to the constitution and bylaws of that organization. And that was persuasive to Magistrate Judge Fallon. She thought your Section 10A argument was persuasive along with the course of dealing. But Judge Sleet, looking at this, clearly was troubled by the precise language of Section 10E of the CBA. And more broadly, I take it, I don't want to attribute some, but I understood him to be saying, look, there's a powerful policy here in labor law against free riders. So when I look at the specific language of Section 10E, and I look at the policy against free riders, it makes no sense to me I can't believe that Union 74, Local 74, was entitled to get all of its dues to its members and nothing get paid to 313 for carrying all the water in negotiating and managing the CBA. That's a very loose paraphrasing of his reasoning, but that's what I understood him to be saying. How is he wrong? What's wrong about that? I think in two ways. First, it overstates, I believe, the level of involvement that Local 74 would have and should have been entitled to under the initial agreement here. The relationship substantially changed when business managers changed between the unions. Stick with the language of the CBA with us for a minute here. As far as the free rider issue is concerned, Local 74 provided the training for these members. These members participate in the benefit funds of Local 74, which they continue to do. Under your theory, not a nickel goes to 313 for managing and dealing with the representation, right? That's correct. They wouldn't have been there in the first place if that were the case. That's a tough road to hoe. Isn't your best argument that, look, we were operating for a long time in a very straightforward way and then everything went south when business managers changed and because of a grudge, because of some ancillary project elsewhere, they just hurt us? Yes. That's the crux of the argument. It is. To get there, and you won, as Judge Jordan said, with Magistrate Fallon, because you would agree that there needs to be ambiguity to get to that level of course of dealing. Yes. So really we've got a very straightforward decision, not necessarily an easy one, but a straightforward decision of is this agreement ambiguous? If it's ambiguous, you're in solid footing because of course of dealing, et cetera, et cetera. If it's not ambiguous, you're out. I think to a large degree, but I don't think you should discount the 302 statutory issue as well. All right. Let's hear his best argument on that. Can I touch on the ambiguity issue first? Sure. I think there are two strong ambiguities here, and they're not merely a matter of reading the contract ambiguities but a matter of law. If you look to Section 7-1, which is the union security clause of the agreement, it includes both unions and it says membership shall be equivalent in both of those unions. And the Supreme Court has established time and again that membership, within the context of a union security clause, doesn't refer to actual membership but only the mere payment of dues. Dues is whittled down to its financial core. And there's a slew of cases, Beck, Marquez, General Motors case, that outline that. So within that, that cannot mean just being a member. It is whittled down to its financial core. Its payment of dues is the core of what that means. That has to mean payment of dues. The second ambiguity, which I think carries the day here, is in Article 10, Section A, it says how the dues are to be calculated for Local 74 members pursuant to their bylaws for the purposes of this provision. Provision is a plain ambiguity in that context because provision can refer to a section, an article, whatever. And 10E appears in the very same article, just below 10A. So those are the ambiguity issues. Rick, you're a little bit over, but we're going to give you a couple minutes because I am interested to hear what your argument is for Section 302. You can't have monetary relief, as you've acknowledged. I have. Right? And the 2008-11 CBA is now expired and gone. Yes. Right? So what's left? If you can't get money and you can't get an injunction because the thing is over, what's left to decide under 302? At this point, Local 74 members continue to work in this facility and Local 313 continues to seek the checkoff. I thought, correct me if I'm wrong, but didn't you take that to an administrative proceeding and lose? I think it's a slightly different issue, and I do acknowledge, and I acknowledge in my brief, that Local 313 has been found to be the sole and exclusive bargaining representative. Okay. So how could we possibly – square that circle for me, all right? How could we find for you, under 302, consistent with what's been decided in the administrative proceeding? Because 302 exists in this context. The 302 violation you're discussing about, which is a voluntary authorization, exists for the protection of the members. Not the union or the employer, but the member to give his voluntary authorization for dues to be taken in this fashion. So what's the remedy that you want? The court is somewhat hamstrung at this point because we did seek an injunctive remedy, but members continue to work there and continue to be deserving of that protection. I'm not sure you need – I'm not sure you need injunction. Write your own order. We don't offer employers a chance to do that. Write your own order in three sentences or less. The court hereby orders – Limited strictly to the – This case. Just the 302. Just the 302. That's what we're trying to get to. Strictly to the – I'm not going to give you money. Strictly to the 302 issue, Local 313 shall no longer collect dues without a valid authorization from the member for the employer to deduct those dues for the benefit of Local 313 on that issue. I think the 302 issue, as it relates to the contract issue, instructs that this – or cements the course of dealing and the understanding of the contract that existed before because those authorizations were in place for Local 714. And that's an order written pursuant to the CBA or the implied in fact contract? The 302 is strictly to the statute. Yeah. And based on the authorizations, right? Yes, sir. Okay. Thanks very much, Mr. Mills. Mr. O'Brien. Good afternoon, Your Honors. Robert F. O'Brien for Local 313 IBEW. Perhaps the only real issue up front here is what the remedy is. The remedy is $106,000 that they're seeking from this union that they say was unlawfully taken from them. That is the focus remedy, at least as far as the case was heard below. We start with the premise that probably the only thing that Mr. Mills and I agree on is that there was a course of dealing. There was past practice. The record is replete with instances where nobody knows where there was – they think there was a written agreement. This is all in the depositions, but the depositions also show that there was nobody who could produce the written agreement from 15 years ago. But there was clearly – and 313 doesn't dispute that for years and years and years, this operated just the way 74 has described it, right? It did. Okay. So if we look at Section 10A of the CBA and it says, referring specifically to Local 74, that their bylaws are going to control as if they were in the shoes of 313 for purposes of that section. We look at that. It isn't one immediate implication of that that 74 is, in fact, a third-party beneficiary of the CBA. No. They're contemplated. They're understood to be in the mix. 313 may be in the bargaining rep, but 74 is a beneficiary of it. No. Then what possible purpose was there for – To protect Local 74's members. It's really important when you look at this case that Local 74 has no representational status. The purpose of this language in the contract was supposedly, if you give it what argument that Mr. Mills is giving it, is to protect members. And you get essentially into the question of whether, in fact, members are protected, not the union, because this is a lawsuit between two unions. Local 74 has no representational status. It does not represent anybody for purposes of wages or hours or negotiations or grievances. It has no representational status. In fact, if you look at the language of the contract, it inures to individual employees' benefits, not the union's benefits because it's not the collective bargaining representative. This case is really unique in respect that it's two unions fighting about a contract. The employer is not here. Right. It is. It's a little unseemly, isn't it? But it is what it is. Please don't answer that. Yeah. It is what it is. So here's one of the challenges that I've had. If you, you know, magistrate Judge Fallon, thoughtful, smart, capable judge. Judge Sleet, thoughtful, smart, capable judge. They listen to this case. They look at the contract, the CBA. They look at the course of dealing. They're looking at the contract. They come to different ideas about what the contract means. Yes. Okay. So if we have two smart, capable, thoughtful judges looking at the same language and coming to very different conclusions, doesn't that indicate that maybe that language is less than clear, that there's some ambiguity in that language that can lead two smart, thoughtful people to absolutely opposite conclusions? Both parties in this case got the benefit of a lot of judicial thinking, both Magistrate Fallon as well as Judge Sleet. But the fact of the matter is Judge Sleet we view as having essentially looked at this and having construed all of the sections of the contract together, while Magistrate Fallon essentially read out of existence the agency shop. Judge Sleet was very, it was a pretty harsh decision, actually. In the district court decision when he overruled the recommendations of Magistrate Fallon, he said essentially she wasn't giving full effect to all the terms and conditions that were in the contract, including Section 10, which required an agency shop contribution because of the representation function. So she found two provisions that were, in fact, intention, but the error she made was that she didn't view it in the context. If she had viewed the entire context of the agreement, the tension is not actually there. Exactly. That's what we feel. The problem here is you've got two unions. One, as I said, is not in a representational status. And that being said, Is that why they pay more? The 313 guys are contributing 3.8 percent, right, and the pipe fitters are paying five and a quarter? No. There's no evidence of that one way or the other. There's no. Internally created. That's the word. Okay. We also get into the question of remedy here. Hold on for just a moment because I'm not sure how. I can understand your argument that Judge Sleet's reading gives some meaning to all the provisions, but I don't see how your argument leads to the conclusion that it alleviates the tension because doesn't the tension between 10E and 10A remain? It requires looking at 10A and saying, well, yeah, maybe we have to treat these people, we have to look to the bylaws, but we can't look to them that much. We've got to really pay attention to the agency shop contribution stuff in 10E and give that dominance because of the clarity of the language in Judge Sleet's view and because of the free rider, anti-free rider policy of labor law. Yes. I mean, I understand his reasoning, I think, but I don't understand your assertion that that doesn't mean 10A and 10E are in tension. They are in tension, aren't they? I don't think so. I still don't share that view. What if we only looked at those two? What if we only looked at Section 10 and didn't look at any of the rest of the agreement? Do you concede Judge Jordan's question? Not necessarily. I'm not sure that I see that there's an ambiguity. I'm not sure you can conclude that there's an ambiguity which should be susceptible to outside evidence, outside the language itself. I just don't see that. You're relying on the language of the assignment, right? And that language clearly expresses intent that the checked-off wages will be given in full to Local 74, no? No. The language that actually in the practice that developed under the language which was in existence is the full amount of the dues at the Local 313 from the employer, Cushman & Wakefield, as a matter of practice, and that's in the transcript. So what are we to ascribe to the checked-off language? I hereby assign to UA 74 for any wages earned or to be earned by me as your employee in my present or in any future employment all dues and assessments which I'll be – I'm sorry – which I am required to pay for each hour I work, and I authorize and direct you to deduct such amount and remit the same to 74 at such times and in such manner as may be agreed between you and Local 74. The last sentence that you just read, such times and in such manner as shall be agreed, there is no understanding between them, between any party, as to how that was going to be accomplished. So there is no agreement? No. So the oral agreement that your adversary referred to, there is none? There is no agreement. So there was never a meeting of the mind? It was just a course of conduct? That's exactly right. Our position is it was a course of conduct here for many years. Well, isn't this part of the course of conduct that the 74 employees would sign this? No? The course of conduct was that the employees would sign it, but Local 313 would get the money and then dole it out. It previously doled it all out to Local 74 and then made a decision as the bargaining rep we're going to keep a portion of it as the bargaining representative doing the heavy lifting on the job. So you unilaterally do that, and then that undermines whatever effect this written assignment has? I would think so. The written assignment either means something or it doesn't mean something. Judge Sleek looked at the assignment as being underneath and not as important as the language of the collective bargaining agreement, which gave rise to it. Our brief also cites to a case involving after the television and radio. I'm sorry. Well, Judge Sleek's a fine, smart judge and all the rest, but I'm just wondering about what intent should we give to the signers of this assignment? They're signing it with no understanding of what will be happening to their money? I mean, I don't get that. Well, the fact of the matter is that for these 15 years the money went to 313. 313 sent all of the money for its 74 people up to 74. That was the practice that developed, no more, no less, and the question becomes whether When you say no more, doesn't that, to the extent that there's a question about what this contract means, doesn't that course of dealing imply things about what was actually agreed between the parties? Shouldn't it inform an understanding? The past practice in and of itself isn't determinative. It doesn't drive the ship. I mean, here, when you say past practice that the parties followed, what does that mean? What means that they did it this way as agreed to? They did it that way for years and years, which sort of indicates that everybody was on the same page. But let's just stick with the document for a second here, the CBA. Section 7.1 of the CBA says when it comes to that everybody has to be a member of the union, which is a defined term meaning 313, and then it says expressly, for purposes of this provision, membership in Good Standing and Plumbers and Pipefitters Local Union 74 counts. Yes. Right? It says that. Yeah. So if we accept the premise that your opposing counsel has put before us, which is the Supreme Court has repeatedly said membership means dues paying. Yes. That's the law. All right. Then the words membership in Good Standing here means that for purposes of 7.1, that Plumbers and Pipefitters Local 74, that's the dues that is checked off on their behalf. That is what makes them members of 313 in and of itself. I don't think so. I think that's a giant leap you're making, Your Honor. Well, I'm not trying to make a leap. I'm trying to understand the words of 7.1. 7.1 was meaningful to Judge Fallin. Magistrate Judge Fallin looked at this and said, I can't, 7.1 doesn't mean anything at all if 10E means everything. Right? If 10E means what Judge Sweet says it means, if 10E means what you say it means, Mr. O'Brien, then 7.1 is superfluous, in there for no reason. How is she wrong about that? She's wrong in that it talks about membership, and membership is membership which Section 7 recognized, membership in a labor union like 74, that they were not 313 people, they were 74 people. But does that compel a conclusion based on past practice that the money has got to be forwarded over? Here's what I don't understand. So you agree that for a period of time there was an agreement. The agreement was 74 people would pay their money into 313 and 313 would remit it to. I don't agree there was an agreement. I stipulate there was a practice. I don't agree that there was any agreement. So the course of conduct doesn't reflect an agreement? No, it was a practice. Yeah, but the practice doesn't reflect an agreement? If I give you a dollar every Monday and then you give 50 cents to my daughter, I don't know, whatever, that course of conduct doesn't reflect an agreement? Not necessarily. It might. It may or it may not.  The thing that makes this case hard, I think especially, is that should the trial judge, ab initio, examine that course of dealing, which I don't think you agree with the three of us, but I think we all agree that the course of dealing, if you can look at it, seems to shed some light on a potential agreement, on a potential ambiguity. But can a district court look at that in the first instance or is the district court required first to evaluate just the terms of the agreement and suspend her and his disbelief about what the course of dealing is? I would think that could well be an answer. Do we have any case law that guides us on that? This thing is very unique. You're not kidding here. Do we have any case law that guides us on the notion that the trial judge needs to focus, and I guess we need to focus on the language of the agreement and put everything else out of our mind, the course of dealing, in determining whether there is an ambiguity? Or are we allowed to consider all those other things, including here the 15-year course of dealing, in trying to decide whether there's an ambiguity? Well, our position is you don't have jurisdiction to begin with because this case was brought under 301 and 302 of the National Labor Relations Act. And as such, that particular section 302, which they're suing under for $106,000 judgment, doesn't allow the court here, because you've already made a decision in the case called Bakersville Container, that in fact 302 offers no monetary relief. Yeah, but suppose we viewed this case slightly differently. Suppose we viewed this case as an oral agreement and said, you know, there are genuine issues of fact as to what the conditions and responsibilities, obligations of the agreement are, and we remanded so that there's discovery on what exactly the nature and scope of the agreement is. You still have the issue of what the remedy ought to be, and that's the $106,000 that they're alleging was taken and can only be paid under 302. Yeah, but there's no constriction on the remedy, right, if this is viewed as an oral contract. It's a whole new case to be litigated. It's a whole new case to be litigated? Whether there's a contract based on that past practice. That's an entirely different case. You have notice of it, right? It's in paragraph 31. Paragraph 31 relies upon the labor contract, the collective bargaining agreement. But it says that there's a separate agreement between the organizations. So that gave you notice that they're alleging that there's an agreement other than the CDA that they're relying on. The only thing I'll grant you, Judge Greenway, is the fact that neither Magistrate Fallin or Judge Sleet ever even considered this issue. Well, I guess I have some additional questions in my mind about what exactly it means to be a member of a union. But I think we've hit this pretty hard already, Mr. O'Brien. Can I make one last point? Sure. It's somewhat unusual. We have a case in there involving a Second Circuit decision involving AFTRA where a dues checkoff provision for a non-collective bargaining representative was found to be not appropriate. I forget what page it's on. But we did cite to a case where the benefit of a dues checkoff provision goes to the certified collector, the actual recognized collective bargaining representative. Here, this is not the recognized collective bargaining representative, and you get into the whole separate issue of can you essentially have a checkoff authorization. And the other thing I would ask is look at the NLRB decision before you decide this. I'm sure you will. But Judge Sleet and Judge Fallin proceeded by a very lengthy NLRB decision that talked about the representation capacity of both unions. And it's kind of relevant to think about. Thank you both for your attention. Thank you. Mr. Mills, you have three minutes, but why don't you start, if you would, with what 7.1 means and respond to Mr. O'Brien's assertion that whatever it means, it certainly doesn't override Section 10E. I would say that Section 7.1, as a matter of very well-tread law, means that members of Local 74 can be employed there without running afoul of the Union Security Clause by payment of dues, which is all that membership within the context of that type of clause allows. But does it say anything? Or mean anything about whether or not that means all of their dues get remitted to 74? Does it mean just because their dues count for membership that all of their dues go to 74? Or does it just stay silent on that and leave that to 10E? I think it leaves that to 10E. And if that's true, don't you lose? I don't see how. Well, because 10E is exactly what Judge Sleet looked at and said, you don't get the free ride, it's an agency shock. I apologize. 10A cannot be read independently of 10E. 10A, 10E, and 7.1 are all part of the package. If you read them differently, you're going to leave out whatever Section 7.1 may mean, or conversely, what 10A means. I'm not going to get up here and argue against check-off. I mean, I represent unions. I'm a firm supporter of check-off provisions and agency fees. I think what you have to recognize is this is a different situation. Well, in this situation, and I think it's important background, that both of these unions come out of a construction tradition that doesn't deal with these things that often. And it's not unusual for members of one union to work on a project side-by-side with another in a fashion similar to this, without mention of payment of an agency fee. That's not unusual. I think it's clear from the outset that was the understanding between these parties by the behavior that they've admitted to. So are you seeking for us to view this as two separate contracts and that there is an oral contract and you do want or are seeking discovery on that? No, I don't think it needs to be further litigated. They admitted, they accepted the money, and they used to hand it off. Now they kept it. If the court will permit an analogy, if you're in a baseball game, sitting in the middle of the row and you want a hot dog, if you hand a $20 bill to the guy in the seat next to you, the contract is you get your hot dog and your change back. He doesn't get to keep it. Unless he's mad at me. Maybe I'm at Yankee Stadium and I have my Red Sox shirt on. He sees that. He says, I want $20, and I wouldn't get the dog. I'm just glad they take my $20 and don't beat me up. If you've got this analogy, it seems really the better analogy is that for 13 years, without giving them a $20 at all, they kept handing you the hot dog. And one time they said, hey, now wait a second. If you want the hot dog, we want some money. That's the assertion they're making is you're free riding. You're getting the hot dogs for free and they don't like it. And based on the NLRB decision that they're the exclusive bargaining representative, they're free to change that deal, and they have now done so. Well, when you say that deal, you put the rabbit in the hat, right? They say there was no deal. Out of the goodness of our hearts, out of foolishness, out of blind affection for the plumbers and pipe fitters, for 13 years, we gave them all the money, but we stopped. Then there's nothing unlawful about that. We're entitled to do it. That is what I take their argument to be. I don't see how one can construe the collective bargaining agreement in a manner that perfectly explains their behavior to separate them. To say they just did this out of the goodness of their heart ignores a perfectly clear explanation. We never go past the CBA to look at their behavior if Judge Sleet's right, correct? We never go outside the four corners of the document. That is correct. We're right back to it's ambiguous, you win. It's not ambiguous, you lose. I think that is fundamentally where we are. So here's a question I've got for both sides. Actually, why don't I just ask counsel to come up here for just a moment, if you would. Thank you. Thank you, counsel. Appreciate it. We'll take the matter under advice. Thank you, Your Honor. We assess court.